OVERHOLT *et al.*, *Appellants*, v. VIETHS.

1. **Practice**: EVIDENCE: PRESUMPTION. It will be presumed that the action of the trial court in rejecting evidence was proper, where there is nothing preserved in the record to show the contrary.

2. ———— : ———— : DAMAGES. In an action for damages by a mother for the drowning of her son, it was not error to exclude evidence as to her financial condition, when she had already testified as to her circumstances and surroundings at the time of the accident.

3. ———— : ———— : ————. In an action for damages for the death of plaintiff's son, based upon the alleged negligence of defendant, in not fencing on a line of his lot, which did not abut upon a street or highway, but on the private property of another, evidence of the impracticability of making such fence is admissible, as bearing upon the question of negligence, especially where the defendant had owned the lot but a short length of time.

4. **Land, Duty of Owner to Fence :** NEGLIGENCE. An owner of land is under no obligation to strangers to place guards around excavations made by him, unless such excavations are so near a public highway as to be dangerous, under ordinary circumstances, to persons passing upon the way, and using ordinary care to keep upon the proper path, in which case he must take reasonable precaution to prevent injuries happening therefrom to such persons.

*Appeal from St. Louis City Circuit Court.*—HON. GEO. W. LUBKE, Judge.

AFFIRMED.

*James P. Dawson* and *G. M. Stewart* for appellants.

(1) The court erred in refusing testimony as to the financial condition of the plaintiff, Mrs. Eliza A. Overholt. *Winters v. Railroad,* 39 Mo. 468–475 ; *Lottman v. Barnett,* 62 Mo. 159 ; *Conroy v. Vulcan Iron Works,* 75 Mo. 651 ; *Frick v. Railroad,* 75 Mo. 542. (2) The court erred in refusing to admit the ordinance offered by the plaintiffs. *Robertson v. Railroad,* 84 Mo. 119 ; *Karle v. Railroad,* 55 Mo. 476 ; *Keim v. Railroad,* 90 Mo. 321, and cases cited. (3) The court erred in admitting testimony to show that defendant could not conveniently fence his lot on the east side ; in other words, to show that it was not negligence in defendant to maintain this nuisance, because it could not be conveniently protected by fencing. *Nagel v. Railroad,* 75 Mo. 653. (4) The instructions given for the defendant were misleading and not warranted by the testimony. (5) The verdict should have been set aside by the court for misbehavior of the jury in failing to award substantial damages. *Welch v. McAllister,* 13 Mo. App. 89 ; 2 Sedgwick on Meas. of Dam. (7 Ed.) p. 660, note *a.*

*Hitchcock, Madill & Finkelnburg* and *David Goldsmith* for respondent.

(1) The petition does not state, and the evidence does not establish, a cause of action. 1 Thompson on

Neg. 303; Shearman and Redf. on Neg., par. 505; *Straub v. Loderer*, 53 Mo. 38; *Gallagan v. Manufacturing Co.*, 3 N. E. Rep. 705; *Klix v. Nieman*, 32 N. W. Rep. 223; *Gillespie v. McGowan*, 100 Pa. St. 144. (2) There was no error in admission of evidence of unfeasibility of enclosing pond. (3) The amount of the verdict furnishes appellants no ground for complaint. *Pritchard v. Hewitt*, 91 Mo. 547; *Gregory v. Chambers*, 78 Mo. 294; R. S., sec. 2123; *Flanders v. Meath*, 27 Ga. 358. (4) There was no error in rejection of evidence of plaintiffs' financial condition. (5) There was no error in rejection of evidence of ordinance. (*a*) Under the present record the rejection of the evidence cannot be reviewed. (*b*) The ordinance was irrelevant, unless it was the basis of the plaintiffs' charge of negligence. *Railroad v. Erwin*, 89 Pa. St. 71. (*c*) And if it was the basis thereof it was not admissible without being pleaded. *Givens v. Van Studdiford*, 86 Mo. 149; *Nutter v. Railroad*, 22 Mo. App. 328. (*d*) The evidence, on its face, related only to enclosure of excavation for the purpose of separating it from the highway, and thus protecting the highway. (*e*) And if it has any further import or effect the city council had no power to enact it. (*f*) The ordinance does not undertake to confer, and the city council had no power to confer, a civil remedy upon any person enjoined by non-compliance with it. *Railroad v. Erwin*, 89 Pa. St. 71; *Hartford v. Talcott*, 48 Conn. 525; *Taylor v. Railroad*, 45 Mich. 74; *Van Dyke v. City of Cincinnati*, 1 Desney, 532; *Boston v. Railroad*, 14 Gray, 253; *City of Keokuk v. Ind. Dist. of Keokuk*, 53 Iowa, 352.

NORTON, C. J.—This suit is to recover damages for the death of plaintiff's eight-year-old son, who was drowned, as alleged, in a pond of water which had been formed in consequence of rock having been quarried on a lot in the city of St. Louis, owned by the defendant.

The jury returned a verdict for plaintiffs, and assessed the damages at ten dollars, and, from the judgment rendered thereon, they have appealed; and, among other errors assigned, is the action of the court in refusing to admit in evidence the following section of an ordinance of the city of St. Louis:

"Section 15. All holes, depressions, excavations, or other dangerous places within the city of St. Louis, that are below the natural or artificial grades of the surrounding or adjacent streets, shall be properly enclosed with fences or walls, or be filled up, so as to prevent persons and animals from falling into them."

This ordinance was objected to on the ground that it had not been pleaded, and on the further ground that the other sections of the ordinance showed that said section related to highways. Inasmuch as one of the grounds of objection is based upon the fact that other sections of the ordinance showed that the section in question related to public highways; and, inasmuch as those other sections are not preserved in the record, we must indulge in the presumption that the ruling of the court was proper. *Kansas City v. Clark*, 68 Mo. 588.

During the examination of Mrs. Overholt, and after she had stated that she was the mother of the child, and a widow at the time of the accident; that she had one other child, a daughter, about fifteen years old; that she and her daughter did the housework; that she had no servant, and, at the time of the accident, she was engaged in housework, she was asked what her financial condition was; and this being objected to by defendant as being immaterial, the objection was sustained, and plaintiffs excepted. In view of what she had been allowed to state as to her condition in life, we are of the opinion that the objection was properly sustained. The court, in receiving her statements as to her circumstances and surroundings at the time the child was drowned, went as far as this court has gone in the case of *Winters*

*v. Railroad*, 39 Mo. 468–475, and others to which we have been cited.

The court allowed a witness to state, over the objection of plaintiffs, that along the eastern line of defendant's lot a fence could not be built without drilling post-holes in the rock. It appears, from the evidence, that the excavation in the lot had been made by quarrying twelve or fifteen years before the accident; that defendant had acquired the lot about four months only before it occurred; that the said excavation extended up to and across the eastern line between defendant's lot and a lot owned by one Hardy; that the eastern bank of the pond, which was precipitous and steep—in some places fifteen or twenty feet high above the water —was wholly upon the the lot of said Hardy, excepting the projection of an occasional rock, extending over the eastern line of defendant's lot. It also appears that the son of plaintiff approached and fell into the pond from the east side, and that he could not approach it from that side without passing over Hardy's lot.

It is clear, from the petition, that this is not an action to recover damages occasioned by the negligence of defendant in failing to fence his lot along a street or highway, to guard against accidents to travelers thereon, but it is based on the alleged negligence of defendant in not fencing on a line of his lot which did not abut on a street or highway, but on the private property of another; and the statement of the witness as to the impracticability of making such fence (if any obligation whatever rested upon him to build a fence there), certainly had a bearing on the question of negligence, especially so in view of the short length of time he had owned the property.

It is next insisted that the amount of damages awarded by the jury is grossly inadequate, and that the trial court erred in not granting a new trial for that reason. The question of difficulty in this case is, whether

the plaintiffs had, under the undisputed facts, any cause of action against defendant. It is neither claimed in the petition, nor is it shown by the evidence, that the son of plaintiff fell into this pond while passing along or over a street or highway, by reason of the failure of the defendant to put a fence along such street, to guard against such accident; but the petition avers that plaintiff's son fell into this pond on the east side thereof, and the evidence shows that the east bank of the pond was wholly on the lot of one Hardy, with the exception of an occasional rock jutting from said bank, one of which extended about eighteen inches over the line on to defendant's lot, and that plaintiff's approach to the pond was on Hardy's lot. Whether he fell from the bank or jutting rock does not satisfactorily appear.

The rule of liability of an owner of property under such circumstances is stated in Shearman & Redfield on Negligence, page 598, section 505: "The occupant of land is under no obligations to strangers to place guards around excavations made by him, unless such excavations are so near a public way as to be dangerous, under ordinary circumstances, to persons passing upon the way, and using ordinary care to keep upon the proper path; in which case he must take reasonable precautions to prevent injuries happening therefrom to such persons." The same rule is announced in 1 Thomp. on Neg., p. 303, sec. 3; *Klix v. Nieman* 32 N. W. Rep. (Wis.) 223; *Gillispie v. McGowan*, 100 Pa. St. 144; *Galligan v. Mfg. Co.*, 3 New Eng. Rep. 705; *Straub v. Soderer*, 53 Mo. 38.

While the authorities above cited recognize the liability of the owner, if a child is injured by dangerous machinery, so situated and exposed that it will naturally attract children, who cannot be expected to comprehend the danger of its use, and takes no precaution to prevent access to it, and thereby impliedly invites children to it,

they distinctly deny the liability of a lot owner under the facts disclosed in this case.

The case of *Klix v. Nieman*, *supra*, decided by the Supreme Court of Wisconsin in March, 1887, is analogous, in its facts, to the case before us. In that case, the complainant alleged that defendant was the owner of a lot in the city of Milwaukee, situated on the northeast corner of two streets. The lot was in a thickly-settled and populous part of the city, and was not fenced, but was vacant, so that the public had free and unobstructed access thereto from both streets; that, a long time prior to the accident, there had been a deep and dangerous hole, or excavation, partially filled with water, making a pond covering about the entire surface; that the water of the pond was soily, so that its depth could not be ascertained except by measurement, but that in places it was of the depth of nine feet, so that the pond was dangerous to the lives of children who might be attracted thereto for amusement or otherwise; that defendant, well knowing that the said pond was dangerous to the lives of children residing in the vicinity of the same, wrongfully, negligently, and carelessly permitted it to remain unguarded by fence or barricade; and that plaintiff's son, a lad about nine years old, while playing around said pond of water, being induced thereto by reason of the unguarded and unprotected condition of said hole, as aforesaid, fell and was precipitated into the same, and was drowned.

In disposing of the question as to whether these facts, which were admitted by demurrer, authorized a recovery, it is said: "It will be observed that it is not alleged that the pond was so near the highway as to make it unsafe for passengers going along the street or sidewalk, and no averment that the boy, when he fell into the pond, was passing along the street or sidewalk. On the contrary, it is stated that the boy was playing

upon and around the pond when he was precipitated into the water and drowned. So the single question presented is, was it the duty of the defendant to fence or guard this hole, or excavation, on his lot (which it does not appear he made, or caused to be made), when surface water collected, in order to secure the safety of strangers, young or old, who might go upon or about the pond for play or curiosity? If the defendant was bound to so fence or guard the pond, upon what principle, or ground, does this obligation rest? There can be no liability unless it was his duty to fence the pond. It surely is not the duty of an owner to guard, or fence, every dangerous hole, or pond, or stream of water on his premises for the protection of persons going upon his land who had no right to go there. No such rule of law is laid down in the books, and it would be most unreasonable to so hold." The judgment of the circuit court, sustaining the demurrer, was affirmed.

So, in the case of *Gillespie v. McGowan*, 100 Pa. St. 144, defendants were the owners of a lot in the suburbs of Philadelphia, upon which there was, and had been for some time, a deep well, which was uncovered and open to view. Neither the well, nor the lot on which it was situated, was fenced around. The lot was a common place of resort for children and adults. A boy, a little less than eight years of age, was found drowned in the well, his hat being found on the side, together with a few small fishes. In a suit by the father, it was held that the boy was a trespasser, and that defendants had not been guilty of any such negligence as would render them liable, it being observed—after criticising, and in part overruling, the case of *Hydraulic Works Co. v. Orr*, 83 Pa. St. 332—that "there are streams and pools of water where children may be drowned; there are inequalities of surface where they may be injured. To compel the owners of such property, either to enclose it or fill up their ponds, and level the surface, so that tres-

passers may not be injured, would be an oppressive rule.
The law does not require us to enforce any such princi-
ple, even where the trespassers are children. We all
know that boys of eight years of age indulge in athletic
sports. They fish, shoot, swim, and climb trees. All of
these amusements are attended with danger, and acci-
dents frequently occur. It is part of a boy's nature to
trespass, especially where there is tempting fruit, yet I
have never heard that it was the duty of the owner of a
fruit-tree to cut it down because a boy trespasser may
possibly fall from its branches. Yet the principle con-
tended for by the plaintiff would bring us to this absurd-
ity, if carried to its logical conclusion. Moreover, it
would charge the duty of the protection of children
upon every member of the community, except their
parents.''

Under this view of the case, plaintiffs cannot be
heard to complain that they only obtained a verdict for
ten dollars damages, inasmuch as the facts, in evidence,
would have justified the court in directing a verdict for
the defendant. But, as defendant has not appealed, the
judgment will be affirmed, with the concurrence of the
other judges.